UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK RAYMOND PHELPS,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW CATE, et al.,<br><br>    Defendants. | CASE NO. 1:13-cv-00309-LJO-MJS<br><br>ORDER DISMISSING COMPLAINT FOR FAILURE TO STATE A COGNIZALBE CLAIM<br><br>(ECF NO. 1)<br><br>AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |

**SCREENING ORDER**

**I. PROCEDURAL HISTORY**

Plaintiff Mark Phelps, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983 on March 4, 2013. (ECF No. 1.) His complaint is now before the Court for screening.

**II. SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail "to state a claim upon

which relief may be granted," or that "seek monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### III.    SUMMARY OF COMPLAINT

Plaintiff identifies (1) Matthew Cate, Secretary of the CDCR, (2) Mike Stainer, Warden of the California Correctional Institution ("CCI") at Tehachapi, and correctional officers: (3) Kristofer Campbell, (4) Jordan Dalton, (5) Steve Gurule, (6) Elizach Rangel, (7) David Stinson, (8) Derrike Wadkins, (9) Jason Ramirez, and (10) ten unnamed correctional officers as the defendants. Plaintiff's allegations can be summarized essentially as follows:

On May 19, 2011, two inmates, Charest and Medina, attacked Plaintiff by stabbing him nine times in the exercise yard. (ECF No. 1 at 18.) The inmates stabbed Plaintiff using a knife that had been made out of a shelf in the cell of Charest's cellmate Boukes. (*Id.* at 5.)

On the date of the incident, unnamed Defendants and Defendants Dalton, Gurule, and Rangel were in charge of strip searching Plaintiff, Charest, and Medina prior to allowing them to enter the exercise yard. (*Id.* at 18.) Defendants either failed to follow the proper procedure for searching the inmates or purposefully allowed the knife to be passed through the security measures. (*Id.* at 18-20.) Additionally, Defendants Campbell, Dalton, Gurule, and Rangel violated the California Code of Regulations ("CCR") by not routinely conducting cell searches which would have revealed that the shelf in Charest's cell had been modified. (*Id.* at 5.) Learning of the modification would have prevented the knife from being brought into the exercise yard and used to attack Plaintiff. Plaintiff further alleges he was attacked because he was mistakenly identified

2

as a sex offender and because prison guards condone and allow such attacks. (*Id.* at 21-22.)

Defendants Stinson, Wadkins, and Ramirez, the Control and Yard Officers on the date of the incident, saw the attack occur, but failed to use deadly force against the attackers to stop it. (*Id.* at 6, 23). As a result, the inmates continued to attack and attempt to kill Plaintiff. (*Id.*)

Defendants Cate and Stainer allowed for the incident to occur by appointing the other Defendants to their positions and failing to properly train, educate and supervise them. (*Id.* at 7, 9.) Further, in retaliation against Plaintiff for filing grievances regarding the incident, they required him to remain in administrative segregation for an extra 191 days, from September 11, 2011 until April 26, 2012. (*Id.* at 8).

As a result of the attack, Plaintiff sustained both physical injuries and psychological and emotional damage. Plaintiff seeks damages, medical costs, and attorney's fees and costs for Defendants' violations of his Eighth and Fourteenth Amendment rights.

## IV. ANALYSIS

### A. Section 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (*quoting* 42 U.S.C. § 1983). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker* v. *McCollan*, 443 U.S. 137, 144, n. 3 (1979)).

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the

color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Ketchum v. Cnty. of Alameda*, 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id.*

### B. Eighth Amendment – Failure to Protect

The Eighth Amendment "protects prisoners . . . from inhumane methods of punishment . . . [and] inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and severe, prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). They also have a duty to take reasonable steps to protect inmates from physical harm by other inmates. *Id.* at 833.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's health or safety. *Id.* at 834. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "'If a [prison official] should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* at 1057 (*quoting Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). The prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of

4

facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id.* at 837; *Anderson v. Cnty. of Kern*, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. *Farmer*, 511 U.S. at 842.

Plaintiff's allegations do not support a claim against Defendants Campbell, Dalton, Gurule, and Rangel for violation of the Eighth Amendment. There are no facts pled to suggest these Defendants knew that inmates Charest, Medina, and Boukes were planning an attack or otherwise presented a substantial risk of harm to Plaintiff's safety. Plaintiff's allegations that Defendants condoned the attack because Plaintiff was perceived to be a sex offender and that their alleged failure to conduct regular cell searches enabled the attack with the knife are purely speculative and unsupported by any facts. Plaintiff has not stated an Eighth Amendment claim against these Defendants in Count I.

Plaintiff also alleges in Count I that ten other unnamed Defendants and Defendants Dalton, Gurule, and Rangel violated his Eighth Amendment rights by either failing to properly search inmates or purposefully allowing the knife to be passed through. But again, Plaintiff pleads no facts which might be said to support his speculations in these regards or any facts suggesting that any of the Defendants knew or should have known of the knife or of any intent to attack Plaintiff. Plaintiff has not pled an Eighth Amendment violation against these Defendants.

In Count II, Plaintiff alleges that Defendants Stinson, Wadkins, and Ramirez failed to protect him by not using deadly force against inmates Charest and Medina. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Id.* at 844-45 (internal quotation marks and citations omitted). Thus, "prison officials who actually knew of a substantial risk to

inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted." *Id.* at 844. Here, the documents attached to Plaintiff's complaint support that the Defendants saw the attack and responded to it. Officer Ramirez sounded the alarm to warn other guards of the attack, Officer Stinson observed the fight on the monitors and opened the doors for responding officers, and Officer Wadkins ordered inmates Charest and Medina to stop attacking Plaintiff and fired upon them four times, striking them both once. (*See* ECF No. 1 at 96-98.) While Defendants' efforts to stop the attack did not immediately stop it, nothing in the pleadings suggests they failed to respond reasonably under all the circumstances. Plaintiff's opinion that they should have used deadly force against the attackers appears to be simply his untrained, lay opinion.

The attack on Plaintiff was unquestionably horrific. However, the Constitution offers redress in such circumstances only if prison officials are shown to have been deliberately indifferent to it. Here, the pleadings suggest just the opposite -- that Defendants acted promptly in response to a surprise attack on Plaintiff. Given their response as reflected in the pleading documents, leave to amend Count II would be futile and will be denied.

The Court will grant Plaintiff leave to amend Count I. Any amended complaint must fully address the above issues and omissions and explain the circumstances underlying Plaintiff's claim in more detail. The facts alleged must demonstrate that each Defendant knowingly disregarded an excessive risk of harm to Plaintiff.

**C.     State Law Negligence Claim**

Plaintiff also claims that Defendants Campbell, Dalton, Gurule, Rangel, Stinson, Wadkins, Ramirez, and the 10 unnamed Defendants were negligent in their duties by failing to protect him from the attack.

"Under California law, [t]he elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against

unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009) (*quoting McGarry v. Sax*, 158 Cal.App.4th 983, 994 (Ct. App. 2008) (internal quotations omitted)).

Under the California Tort Claims Act ("CTCA"), Plaintiff may not maintain an action for damages against a public employee unless he has presented a written claim to the state Victim Compensation and Government Claims Board within six months of accrual of the action. Cal. Gov't Code §§ 905, 911.2(a), 945.4 & 950.2; *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). Failure to demonstrate such compliance constitutes a failure to state a cause of action and will result in the dismissal of state law claims. *State of California v. Superior Court (Bodde)*, 32 Cal.4th 1234, 1240 (2004).

Plaintiff cannot base a negligence claim on the above allegations against Defendants because he has not demonstrated compliance with CTCA claim filing requirements.

### D.     Linkage Requirement

Under Section 1983, Plaintiff must demonstrate that each Defendant personally participated in the deprivation of his rights. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). In other words, there must be an actual connection or link between the actions of the Defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 695 (1978).

Plaintiff names 10 unnamed Defendant correctional officers in this action. If Plaintiff wishes to proceed against these ten individuals, he must separate them and provide a unique identifier for each individual, *e.g.* John Doe 1, 2, 3, etc. Additionally, if Plaintiff wishes to amend his complaint, he must specifically link each unnamed Defendant to an alleged deprivation of his rights.

### E. California Code of Regulations

To the extent that Plaintiff alleges Defendants violated Title 15 of the CCR, he does not state a cause of action. The existence of the CCR does not necessarily entitle an inmate to sue civilly. The Court has found no authority to support a finding of an implied private right of action under Title 15, and Plaintiff has provided none. Several district court decisions hold that there is no such right. *See e.g., Vasquez v. Tate*, No. 1:10-cv-1876-JLT (PC), 2012 WL 6738167, at \*9 (E.D. Cal. Dec. 28, 2012); *Davis v. Powell*, 901 F. Supp. 2d 1196, 1211 (S.D. Cal. 2012). Because Plaintiff may not bring an independent claim solely for violation of prison regulations set out in Title 15, leave to amend such a claim is futile and will be denied on that basis.

### F. Supervisory Liability

Government officials may not be held liable for the actions of their subordinates under a theory of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 691 (1978). Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions by linking each named Defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights. *Iqbal*, 556 U.S. at 676.

Liability may be imposed on supervisory defendants under § 1983 only if the supervisor: (1) personally participated in the deprivation of constitutional rights or directed the violations or (2) knew of the violations and failed to act to prevent them. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Defendants Cate and Stainer cannot be held liable for being generally deficient in their supervisory duties. Plaintiff must allege facts that these Defendants either directed their subordinate correctional officers to permit the attack, knew of the attack and failed to prevent it, or otherwise committed some affirmative act or omission that resulted in a violation of Plaintiff's Constitutional rights.

The Court will grant Plaintiff leave to amend his complaint to state a claim against these Defendants. To do so, Plaintiff needs to set forth sufficient facts showing that Warden Stainer and ex-Secretary Cate <u>personally</u> took some action that violated his constitutional rights. Mere supervision of individuals responsible for a violation is not sufficient.

### G. Failure to Train

A supervisor's failure to train subordinates may give rise to individual liability under § 1983 where the failure amounts to deliberate indifference to the rights of persons with whom the subordinates are likely to come into contact. *Canell v. Lightner*, 143 F.3d 1210, 1213-14 (9th Cir. 1998). To impose liability under this theory, a plaintiff must demonstrate that the subordinate's training was inadequate, that the inadequate training was a deliberate choice on the part of the supervisor, and that it caused a constitutional violation. *See id.* at 1214; *See also City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989); *Lee v. City of Los Angeles*, 250 F.3d 668, 681-82 (9th Cir. 2001).

In Count III, Plaintiff alleges that Defendants Cate and Stainer failed to train the other defendants, but he does not allege facts that suggest these Defendants deliberately provided inadequate training, policies, and supervision for the purpose of creating a constitutional violation. Plaintiff will be given leave to amend.

### H. Administrative Segregation

In Count IV, Plaintiff alleges that his First, Eighth, and Fourteenth Amendment rights were violated when he was placed in segregation for an additional 191 days for filing grievances and requests for information regarding the attack against him.

#### 1. First Amendment Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).

Plaintiff adequately alleges that: 1) Defendants took an adverse action against him by placing him in segregation, 2) he filed and pursued a grievance, a protected action under the First Amendment, and 3) he was transferred to an environment where he was confined for 23 hours per day and deprived of regular prisoner privileges, an action that would chill a person of ordinary firmness from repeating the actions which caused the transfer. *See Rhodes*, 408 F.3d at 568-69 (*citing Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

However, Plaintiff fails to allege facts to fulfill the pleading requirements for either the second or the fifth element. With respect to the second, Plaintiff must allege that his protected conduct was a "'substantial' or 'motivating' factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (*quoting Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). And, with respect to the fifth, Plaintiff must affirmatively allege facts that show "'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985). Plaintiff will be granted leave to amend to allege both of these elements.

### 2. Eighth Amendment Cruel and Unusual Punishment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citations omitted). "[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

Plaintiff has failed to explain why his placement in segregation posed a

substantial risk of harm to him and how Defendants were deliberately indifferent to this harm. If Plaintiff wishes to amend, he must allege facts accordingly.

### 3. Fourteenth Amendment Due Process

Lastly, Plaintiff alleges that he was placed in segregation without sufficient due process of law. The Due Process Clause protects Plaintiff against the deprivation of liberty without the procedural protections to which he is entitled under the law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To state a claim, Plaintiff must first identify the interest at stake. *Id.* Liberty interests may arise from the Due Process Clause or from state law. *Id.* The Due Process Clause itself does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, *id.* at 221–22 (citations and quotation marks omitted), and under state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. *Id.* at 222–23 (*citing Sandin v. Conner*, 515 U.S. 472, 481–84 (1995)). Liberty interests created by prison regulations are generally limited to freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Wilkinson*, 545 U.S. at 221 (*quoting Sandin*, 515 U.S. at 484); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007).

Not all segregated housing gives rise to a protected liberty interest. *See Sandin*, 515 U.S. at 485 (no liberty interest protecting against a 30-day assignment to disciplinary segregation because it did not "present a dramatic departure from the basic conditions of [the inmate's] sentence"). Whether prison conditions give rise to a protected liberty interest requires an evaluation of (1) whether the challenged conditions mirror those imposed under the prison's discretionary authority; (2) the duration of the condition and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence. *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003). Plaintiff has not alleged sufficient facts for the Court to determine whether his continued placement in segregation imposed atypical and significant hardship in relation

11

to the ordinary incidents of prison life.  *Sandin*, 515 U.S. at 485; *Wilkinson*, 545 U.S. at 221; *Myron*, 476 F.3d at 718.  He has not alleged the circumstances under which he was housed in segregation, the degree of restraint, or how, if at all, this affected his sentence.  Plaintiff will be granted leave to amend.

## V. CONCLUSION AND ORDER

Plaintiff's Complaint does not state a claim for relief.  The Court will grant Plaintiff an opportunity to file an amended complaint.  *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims.  *Roth v. Garcia Marquez*, 942 F.2d 617, 628-629 (9th Cir. 1991).  Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  As a general rule, an "amended complaint supersedes the original" complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.  Plaintiff's amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a blank civil rights complaint form;

2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief may be granted;

12

3. Plaintiff shall file an amended complaint within thirty (30) days; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend that this action be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated: December 23, 2014   /s/ *Michael J. Seng*
UNITED STATES MAGISTRATE JUDGE